UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LOPEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. KRIEG, et al.,<br><br>　　　　Defendants. | No. 2:13-cv-1176 KJM AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I.     Introduction

Plaintiff is a state prisoner currently incarcerated at the Correctional Training Facility (CTF) in Soledad, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on plaintiff's First Amended Complaint (FAC), on claims that defendants Krieg and McDow were deliberately indifferent to plaintiff's serious dental needs in violation of the Eighth Amendment when plaintiff was incarcerated at the Sierra Conservation Center (SCC) in Jamestown. See ECF No. 70. Presently pending are the parties' cross-motions for summary judgment. See ECF Nos. 94, 95.

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motion for summary judgment be granted, and plaintiff's motion for summary judgment be denied.

II.     Background

Plaintiff filed his initial complaint on June 12, 2013, ECF No. 1, and the operative FAC on October 27, 2014, against defendants J. Krieg, T. McDow, W. Freichter, and L.D. Zamora, see ECF No. 70. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was granted in part, resulting in the dismissal of defendants Freichter and Zamora. See ECF Nos. 76, 79. Remaining defendants Krieg and McDow filed their answer to the FAC on August 13, 2015. See ECF No. 84. Discovery proceeded until January 15, 2016. See ECF No. 82. The parties filed their instant motions in April 2016, see ECF Nos. 94, 96, which were timely opposed and are now fully briefed.

III.    Legal Standards

    A.      Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[1]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

---

[1] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

3

1    In the endeavor to establish the existence of a factual dispute, the opposing party need not
2 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
3 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
4 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
5 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
6 Matsushita, 475 U .S. at 587 (citations omitted).

7    In evaluating the evidence to determine whether there is a genuine issue of fact," the court
8 draws "all reasonable inferences supported by the evidence in favor of the non-moving party."
9 Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).
10 It is the opposing party's obligation to produce a factual predicate from which the inference may
11 be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
12 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
13 party "must do more than simply show that there is some metaphysical doubt as to the material
14 facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the
15 nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation
16 omitted).

17    In applying these rules, district courts must "construe liberally motion papers and
18 pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."
19 Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly
20 support an assertion of fact or fails to properly address another party's assertion of fact, as
21 required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion
22 . . . ."  Fed. R. Civ. P. 56(e)(2).

23    B.    Legal Standards for Deliberate Indifference to Serious Medical Needs
24    "[D]eliberate indifference to serious medical needs of prisoners constitutes the
25 unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true
26 whether the indifference is manifested by prison doctors in their response to the prisoner's needs
27 or by prison guards in intentionally denying or delaying access to medical care or intentionally
28 interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)

4

(internal citations, punctuation and quotation marks omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

To state a claim for deliberate indifference to serious medical needs, a prisoner must allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . . ."

////

Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Farmer, 511 U.S. at 842. On the other hand, prisons officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson, 501 U.S. at 298; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

IV.     Facts

Unless otherwise noted, the following facts are undisputed by the parties[2] or as determined by the court based on a thorough review of the record.

- On July 21, 2010, while incarcerated at the Correctional Training Facility (CTF), plaintiff filed a Health Care Appeal, Log No. CTF-14-10-12419, seeking approval for partial dentures. His appeal stated in full, FAC at 12:

> Describe Problem: I would like to have parcials (sic) because I have been having problems when chewing my food. My gums get bruised and cause pain. Under Section 3350[b](4),[3] I should be given this dental treatment (replacement) because it's a medical

---

[2] These facts are taken from plaintiff's verified First Amended Complaint (FAC), ECF No. 70, and attached exhibits; Defendants' Statement of Undisputed Material Facts (DUF), ECF No. 94-3, and supporting declarations; Plaintiff's Deposition Transcript, and defendants' supporting declaration, ECF No. 97; Plaintiff's Opposition to Witness Statements, ECF No. 101, and supporting exhibits; CDCR's pertinent regulations and health services guidelines.

[3] Cal. Code Regs. tit. 15, § 3350(a) provides in part that CDCR "shall only provide medical services for inmates, which are based on medical necessity and supported by outcome data as effective medical care." "Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care" Id., §3350(b)(3). "Severe pain means a degree of discomfort that significantly disables the patient from reasonable independent function." Id., §3350(b)(4).

6

> problem as well. Also because I'm a lifer and have not the ability to seek or purchase dental services else where.
>
> Action Requested: That I be given parcial (sic) because I am unable to chew food properly and many foods, fruits cause cuts and bruises which irritate and are painful.

- On August 26, 2010, plaintiff's appeal was partially granted on First Level Review by CTF staff dentist Dr. Andrew Wise, and approved by the supervising dentist (name illegible) on August 31, 2010. FAC at 13-4; Krieg Decl., Ex. B. The appeal response provided in pertinent part, id.:

> Appeal Response: You were interviewed on 8/26/2010 by Dr. Wise at [CTF] North Dental Clinic. Your treatment plan consists of four quadrants of Scaling/Root Planing before partial dentures can be fabricated. Two quadrants were completed on July 16, 2010. You will be ducated for the remaining quadrants according to your dental priority code (DPC) of two (2).[4] Your request for partial dentures is partially granted
>
> Appeal Decision: Your First Level appeal has been PARTIALLY GRANTED in accordance with the Dental Policy and Procedures. If you are dissatisfied with this decision, you may appeal to the Second Formal Level . . . .

- Plaintiff did not further pursue this appeal.
- A few months later, plaintiff was transferred to the Sierra Conservation Center (SCC) in Jamestown.
- On October 7, 2011, plaintiff submitted Health Care Appeal Log No. SCCHC-11010151, pursuant to which he requested that the decision on his CTF appeal, in Log No. CTF-14-10-12419, "be honored as binding authority" at SCC. FAC at 5, see also id. at 5-11; Krieg

---

[4] CDCR's Dental Priority Classification (DPC) system requires care within specified periods, as follows, see California Correctional Health Care Services (CCHCS) Division, Dental Services, Dental Priority Classification 5.4-3 (Aug. 2010):
  Emergency Care (acute care, to be provided immediately);
  DPC 1 (urgent care, to be provided within 1 day (DPC 1A),
     30 days (DPC 1B), or 60 days (DPC 1C));
  DPC 2 (interceptive care, to be provided within 120 days);
  DPC 3 (routine rehabilitative care, to be provided within one year);
  DPC 4 (no dental care needed); and
  DPC 5 (special needs care).

7

Decl., Ex. A.  Plaintiff explained in part, id.:

> On or about 9-29-11, I went for teeth cleaning.  Once finished I mentioned to the SCC Dentist that earlier in the week I left a copy of a 602, which was granted at CTF North Facility Soledad for Partials.  He [Dr. Lor][5] then did state that his supervisor had told him that the 602 wasn't accepted here at this institution; therefore the dental work granted will not be carried out.  The denial of this granted appeal has and continues to prolong pain and suffering. . . .

- On October 17, 2011, defendant Supervising Registered Dental Assistant (SRDA) Krieg interviewed plaintiff regarding this appeal.  FAC at 16-17; Krieg Decl., Ex. C.  Defendant Krieg avers as follows concerning her interview with plaintiff and her response, Krieg Decl. ¶¶ 3-7:

> 3.  On October 17, 2011, I interviewed Mr. Lopez regarding his October 7, 2011 grievance.  I explained to him that under California Department of Corrections and Rehabilitation (CDCR) policies and procedures, an inmate who had eight or more occluding posterior teeth did not qualify for dentures, and that since he had nine occluding posterior teeth, he did not qualify. The foregoing explanation was memorialized in the first-level response to the grievance dated November 7, 2011.  [See Krieg Decl., Ex C (First Level Appeal Response).]
>
> 4.  In connection with my October 17, 2011 interview, I reviewed Mr. Lopez's dental records, including records from his September 29, 2011 visit, the most recent dental exam by a treating dentist before the interview.  Dr. Lor was Mr. Lopez's attending dentist on that date.  The September 29, 2011 dental record indicated that Dr. Lor completed Mr. Lopez's dental treatment and he gave Mr. Lopez a Dental Priority Code 4.  Dental Priority Code 4 means that no further dental care is needed.  The medical record for this appointment did not indicate that Dr. Lor recommended a special dental prosthesis, or that Dr. Lor pursued a request for an exemption to the Dental Authorization Review Committee.  [See Krieg Decl., Ex D (Dr. Lor's notes of plaintiff's Sept. 29, 2011 treatment).]
>
> 5.  I had no basis to recommend that Mr. Lopez receive an exemption to the CDCR dental policy that disallowed dentures to inmates with eight or more posterior teeth in occlusion because his attending/diagnosing dentist neither prescribed the treatment as clinically necessary, nor did he submit a request for an exemption to the Denial Authorization Review Committee, and Mr. Lopez's then-current dental records did not otherwise reflect entitlement to an exemption.  I was not Mr. Lopez's attending/diagnosing dentist.  I relied upon Dr. Lor's assessment.  Additionally, as a Supervising

---

[5] The dentist who treated plaintiff on September 29, 2011 was Dr. S. Lor.  See Krieg Decl., Ex. D (Dr. Lor's Sept. 29, 2011 treatment notes).

8

> Registered Dental Assistant, I did not have the authority to grant an exemption.
>
> 6. I prepared the draft first-level response to Mr. Lopez's grievance and submitted it to Dr. McDow, the Supervising Dentist, for review and approval on or around November 7, 2011.
>
> 7. I did not intend to cause Mr. Lopez harm. I did not believe he qualified for dentures under CDRC policy because he had nine occluding posterior teeth. Additionally, his SCC dental records did not indicate that his most recent attending/diagnosing dentist recommended an exemption to the dental policy, which is required for an inmate to obtain an exemption. I had no reason to believe that Dr. Lor had not adequately and professionally exercised his medical judgment or that he improperly withheld a recommendation for an exemption.

- On November 7, 2011, defendant Supervising Dentist (SD) Dr. McDow reviewed and approved defendant Krieg's First Level Response to plaintiff's grievance. FAC at 16-17; Krieg Decl., Ex. C. Defendant McDow initially noted, "SRDA Krieg explained that based on policies and procedures, an inmate does not qualify for prosthetics if all the anterior teeth were present or had eight or more occluding teeth. She stated you have nine occluding posterior teeth at this time and did not qualify for prosthetics." FAC at 17. Defendant McDow avers that he made the following assessment, McDow Decl. ¶¶ 2-7:

> 2. On or around November 7, 2011, I reviewed and approved the first-level response to Mr. Lopez's grievance, Log No. SCCHC 11010151. In this grievance, Mr. Lopez requested that SCC honor a more that one-year old vague partial grant of dentures from another institution. I could not grant Mr. Lopez's request simply because he believed that another institution had granted him dentures. Rather, I could grant the request only if Mr. Lopez qualified for dentures under CDCR policy.
>
> 3. When I reviewed and approved the first-level response, it was my understanding that Mr. Lopez's dental records indicated that Mr. Lopez had nine occluding posterior teeth. Thus, under CDCR policy, Mr. Lopez did not qualify for dentures unless his attending/diagnosing dentist recommended them.
>
> 4. Dr. Lor was Mr. Lopez's attending/diagnosing dentist on September 29, 2011, the last time that Mr. Lopez had been seen by a dentist prior to November 7, 2011.
>
> 5. Mr. Lopez's SCC dental records did not indicate a special need for dentures. This is evidenced by Dr. Lor giving Mr. Lopez a Dental Priority Code of 4 on September 29, 2011. A Dental Priority Code of 4 means no further dental care is needed.

9

> 6. When I signed the first-level response, I had no basis to grant an exemption to the [CDCR] dental policy that disallowed dentures to inmates with eight or more posterior teeth in occlusion because Mr. Lopez's attending/diagnosing dentist, Dr. Lor, had not prescribed the treatment as clinically necessary or submitted a request for an exemption to the Dental Authorization Review Committee, and Mr. Lopez's then-current dental records did not otherwise reflect entitlement to an exemption. I was not Mr. Lopez's attending/diagnosing dentist. I relied upon Dr. Lor's assessment.
>
> 7. I did not deny Mr. Lopez's request for dentures to cause him harm. I denied Mr. Lopez's request because he did not qualify for dentures under CDRC policy, nor did his records indicate that his attending/diagnosing dentist recommended an exemption to the dental policy, which is required for an inmate to obtain an exemption. I had no reason to believe that Dr. Lor did not adequately and professionally exercise medical judgment or that he improperly withheld his recommendation for an exemption.

- Plaintiff's appeal was denied at the Second Level on January 11, 2012, by former defendant W. Freichter, Health Program Manager (HPM) III, who agreed with defendant McDow's assessment that plaintiff did "not qualify for a partial/denture as all of your anterior teeth are present and you have more than seven occluding posterior teeth." FAC at 19. The appeal was denied at the Third Level on April 13, 2012, by former defendant L.D. Zamora, CCHCS Chief, who opined, FAC at 20-1:

> Your appeal file and document obtained from your Unit Health Record (UHR) were reviewed by licensed clinical staff and revealed the following:
>
> • You have misinterpreted the First Level Response from CTF. In being partially granted, CTF meant you would receive all preprosthetic services prior to a final evaluation of the need for prosthetics;
>
> • The comprehensive dental exam at SCC is clear that you do not have the medical necessity for dental prostheses.
>
> The Inmate Dental Services Program Policies and Procedures, Chapter 2.6, states in part, "A dental prosthesis shall be constructed only when an inmate-patient is edentulous, is missing an anterior tooth, or has seven or fewer poster teeth in occlusion."
>
> After review, there is no compelling evidence that warrant interventions at the DLR as your dental condition has been evaluated by licensed clinical staff and you are receiving treatment deemed medically necessary.

////

- Plaintiff filed his initial complaint in this action on June 12, 2013, while still incarcerated at SCC.  See ECF No. 1.

- In December 2013, plaintiff was transferred back to CTF, where he had received the partial grant of his initial appeal.  Pltf. Depo. at 22:10, 23:13-24:3, 43:24-44:5.

- Plaintiff filed the operative FAC on October 27, 2014.  ECF No. 70.

- In April 2016, Dr. Uy, CTF Supervising Dentist since 2014, submitted a declaration reflecting his review of plaintiff's dental records, and conclusion that, since plaintiff's return to CTF, there is no basis for recommending that he be accorded an exemption to CDCR's policy regarding dentures.  Dr. Uy stated and opined as follows:

> 2. Mr. Lopez's dental records at CTF reflect the following:
>
> a. Mr. Lopez saw Dr. C. Nguyen, a dentist, on June 20, 2014, about receiving partial dentures, and Dr. Nguyen advised him that he did not qualify for partial dentures. [See Pltf. Ex. C, ECF No. 101 at 35-7, 39.]
>
> b. Mr. Lopez saw Dr. Nguyen again on August 28, 2014, for a comprehensive exam.  The records do not reflect that a recommendation for partial dentures was contemplated by the dentist on this date of service. [See Pltf. Ex. C, ECF No. 101 at 40.]
>
> c. On December 26, 2014, Dr. J. Chang, a dentist, treated Mr. Lopez for a filling.  The records do not reflect that a recommendation for partial dentures was contemplated by the dentist on this date of service. [See Pltf. Ex. C, ECF No. 101 at 38.]
>
> d. Mr. Lopez was treated on February 5, 2015 by Dr. Babienco, a dentist. The treatment plan that had been recommended on August 28, 2014, which did not include dentures, was completed. The records do not reflect that a recommendation for partial dentures was contemplated by the dentist on this date of service. [See Pltf. Ex. C, ECF No. 101 at 31, 38.]
>
> e. Mr. Lopez's last appointment with a dentist as of the date of this declaration occurred on February 11, 2016, when he saw Dr. E. Razavi for a comprehensive exam.  The records do not reflect that a recommendation for partial dentures was contemplated by the dentist on this date of service. [See Pltf. Ex. C, ECF No. 101 at 32.]
>
> 3. On April 6, 2016, I reviewed x-rays (panoramic and full mouth) that were taken of Mr. Lopez on February 11, 2016. As of the date of the x-rays, Mr. Lopez had at least nine posterior teeth in

11

> occlusion. Since his arrival back at CTF, there is nothing in Mr. Lopez's dental records that indicate Mr. Lopez should have an exemption to CDCR's policy regarding dentures, there is no indication any dentist ever recommended or even contemplated such an exemption, and [I] have no basis for recommending an exemption.

Uy Decl. ¶¶ 2-3.

- It is the policy of CDCR to provide "limited dental prosthodontic services to inmate-patients in its custody." See CDCR's Inmate Dental Services Program Policies & Procedures (IDSPPP), Chapter 2.6 (Dental Prosthodontic Services), Section I (Policy); Krieg Decl., Ex. E. The procedure for executing this policy requires that "[a] dental prosthesis shall be constructed only when . . . [a]n inmate-patient is edentulous [has no teeth], is missing an anterior [front] tooth, or has seven or fewer posterior teeth in occlusion [teeth meeting other teeth]." Id., Section III[6]-A-4-b.

- Plaintiff does not claim that he meets any of these threshold standard conditions for dental prostheses. Pltf. Depo. at 36:3-25, and 48:13-7.

- For an inmate to qualify for "Special Prosthetic Needs" exempt from these conditions, a dentist must request and obtain an exemption from the Dental Authorization Review (DAR) Committee. See IDSPPP Chap. 2.6, § III-E (2010) (III-F in 2014); Krieg Decl., Ex. E. The request must identify the prisoner's history of prior prosthetic needs and replacements, the dentist's recommendations, and the special circumstances supporting such recommendations. Id.

- An inmate who has obtained formal authorization for a dental prosthesis will receive such care even if transferred to another institution. "[A] completed prosthetic case or one that is in progress, regardless of the stage of completion, shall be forwarded directly to the SD [Supervising Dentist], or designee, to the inmate-patient's new facility of assignment for completion or delivery." Id., Chap. 2.6, § III-C-2-b.

////

////

---

[6] This provision is designated Section III in the 2010 IDSPPP, and Section IV in the 2014 IDSPPP. See Krieg Decl., Ex. E.

V.   The Parties' Arguments

Plaintiff moves for summary judgment on the ground that defendants were deliberately indifferent to his serious medical needs when they denied him the dental care prescribed by CTF dentist Dr. Wise and approved by the CTF supervising dentist. See ECF No. 95. He notes that Dr. Wise and the supervising dentist who partially granted his request for partial dentures stated that their decision was "in accordance with the Dental Policy and Procedures," see FAC at 14, and contends on that basis that they found plaintiff's pain and difficulties chewing to constitute the "medical necessity" requiring partial dentures. See ECF No. 101 at 5, 6.

Plaintiff challenges the declarations of defendants Krieg and McDow, and that of Dr. Uy. See ECF No. 101. He contends that defendants Krieg and McDow "did not have the intentions of really looking into plaintiff's complaint," but instead "continued down a path of coming up with reasons not to except (sic) the granted appeal from C.T.F." Id. at 5. Plaintiff contends that defendants improperly denied an "already pre[s]cribed treatment," and "[s]o in a sense the defendants actually were challenging Dr. Wise and his supervisor[.]" Id. at 7. Plaintiff emphasizes that he continues to endure pain and discomfort.[7] Id. at 8. Plaintiff contends that defendants Krieg and McDow have offered only the following "false excuses," viz., "Appeal was from another prison, the changing of categories 2 to 4; plaintiff wanted partials for cosmetic reasons; the appeal had not [been] exhausted . . . . Missing teeth that the CDC pulled[.] Plaintiff['s] sentence is another factor to pain and suffering since plaintiff is deprived the right to seek treatment elsewhere[.]" ECF No. 95 at 5.

Plaintiff contends that Dr. Uy's declaration failed to consider "the entirety of the case." ECF No. 101 at 2. Plaintiff complains that Dr. Uy failed to consider the treatment records of Dr. Wise and his supervising dentist, their assessment that plaintiff should have partial dentures, and the preparation of two of plaintiff's four oral quadrants. Id. Plaintiff also contends that Dr. Uy inaccurately described Dr. Chang's treatment of plaintiff on December 26, 2014, see Uy Decl. ¶

---

[7] Plaintiff asserts that defendants "probably don't know how it feels to chew without back teeth and suffer cuts, bruises and sleepless nights. Having to awake and try to soothe the pain with pain pills. Or choking at times when having to swallowing food because he could not chew his food fast enough in the dining hall. . . ." ECF No. 101 at 8.

2(c), because plaintiff "did not discuss partials with Dr. J. Chang," ECF No. 101 at 3.

Plaintiff has submitted additional evidence discovered July 20, 2016, when he was informed by attending dentist Dr. S. Madan that his dental pain when chewing for the past six years is attributable to a "deep filling." ECF No. 107 at 1. Plaintiff explains that "[o]n this day the attending dentist stated that she couldn't perform any treatment except extraction, due to three fil[l]ings which one was placed deep into the tooth and up against the nerves, causing continuous pain." Id. at 1, 6. Plaintiff asserts that "[t]he defendants are liable for denying plaintiff medical dental relief, leaving plaintiff to suffer continuous pain/suffering because they chose not to grant a medical/dental procedure already pre[s]cribed by the original attending dentist and supervisor based on a granted 602 appeal." Id. at 1-2.

Plaintiff seeks damages and an injunction from this court directing "defendants and all persons acting in concert with them to accept the original binding granted appeal and treat plaintiff and or that this court grant in its entirety plaintiff's release so that he can obtain treatment." ECF No. 100 at 9-10. Plaintiff has also submitted the signatures of several inmates who contend that there are "numerous problems concerning languish (sic) translation when addressing our medical/needs." See ECF No. 101 at 60-2 (Ex. E). The petition states that interpreters are often required yet unavailable, rendering "the communication between the physician and inmate . . . a guessing game using sign language gestures. . . . [M]any complaints have arisen out of C.T.F. Soledad, CA."[8] ECF No. 101 at 61.

Defendants move for summary judgment on the ground that plaintiff has submitted no evidence supporting a reasonable inference that either defendant had the culpable state of mind required to sustain a deliberate indifference claim. See ECF No. 94-1 at 8-10. Defendants maintain that their conduct was consistent with the provisions of CDCR's IDSPPP, and they appropriately found that plaintiff did not meet the standard requirements for obtaining dentures.

---

[8] This petition is not relevant to this action because plaintiff has not contended that defendants were deliberately indifferent to his dental needs due to a language barrier. Similarly, plaintiff's health care appeal based on his concerns that he may have contracted hepatitis from contaminated dental equipment, see ECF No. 101 at 3, 44-59 (Ex. D), and his challenges to the opening of his legal mail, see ECF No. 101 at 1-2, are not relevant to the matters currently before the court.

Defendants contend that plaintiff has failed to demonstrate he was or is entitled to an exemption to these requirements. See ECF No. 99. They note that plaintiff's subject appeal was only "partially granted," authorizing scaling and root planning, but did not expressly grant plaintiff's request for dentures. ECF No. 102 at 3. Defendants assert that "[i]f Plaintiff's request for dentures was granted, the response would have said 'granted,' not 'partially granted.'" ECF No. 102 at 3. They contend that this action "logically indicates that Plaintiff was granted only the precursor treatment for dentures so that when Plaintiff lost another tooth and qualified for dentures, he would be ready." ECF No. 94-1 at 8. Defendants emphasize that, even after plaintiff's transfer back to CTF, no dentist has made such a recommendation. Finally, defendants contend that they were "not in a position" to grant plaintiff an exemption because they were not his treating or evaluating dentist, but merely "a dental assistant and a supervising dentist who reviewed his grievance." Id. at 1.

Alternatively, defendants contend they are entitled to qualified immunity because their challenged conduct was consistent with the provisions of CDCR's IDSPPP, which reflect clearly established law as negotiated pursuant to the prisoner dental care class action in Perez v. Tilton, 2006 WL 2433240, 2006 U.S. Dist. LEXIS 63318 (Case No. C-05-05241 JSW) (N.D. Cal. Aug. 21, 2006). See ECF No. 94-1 at 10-2.

VI.  Analysis

It is undisputed, for purposes of the pending motions, that plaintiff's dental problems – pain and difficulties chewing – present "serious medical needs" within the meaning of the Eighth Amendment. See McGuckin, 974 F.2d at 1059-60. The parties' consensus on this matter satisfies the first prong of plaintiff's deliberate indifference claim. See Jett, 439 F.3d at 1096. The parties dispute the second prong of plaintiff's claim, whether defendants purposefully failed to act in response to plaintiff's serious medical needs and thereby caused him harm. Id.

Defendants have submitted substantial evidence supporting their respective assertions that at no time did they "know of and disregard" an excessive risk of harm to plaintiff. Defendants, who worked at SCC, were tasked with construing the impact, if any, of CTF's August 2010 "partial grant" of plaintiff's request for "partial dentures" on plaintiff's current dental needs.

CTF's decision is arguably ambiguous, partially granting plaintiff's request for partial dentures. Although the decision notes pre-denture preparation (scaling and root planning) in two of plaintiff's four oral quadrants, plaintiff submitted no evidence demonstrating the preparation of his remaining two quadrants while he remained at CTF for several months before his transfer to SCC, despite a DPC 2. Thus, neither the CTF decision nor plaintiff's subsequent CTF care reasonably alerted defendants to the possibility that plaintiff may be harmed by his failure to obtain partial dentures.

Moreover, defendants were precluded from finding that the CTF decision qualified as an "exemption" to IDSPPP's standard requirements for dental prostheses – such assessment was not included in the text of the CTF decision, and there is no evidence that SCC's Supervising Dentist was informed, upon plaintiff's transfer from CTF to SCC, that plaintiff had a "prosthetic case . . . in progress," as would have been required. See IDSPPP, Chap. 2.6, § III-C-2-b. Nor is there any evidence that a CTF dentist sought an exemption on plaintiff's behalf through the Dental Authorization Review Committee.

Due to the ambiguity of the CTF decision rendered more than a year before, defendants were required to assess plaintiff's current dental needs according to IDSPPP criteria. When defendant SRDA Krieg interviewed plaintiff on October 17, 2011, and reviewed his dental records, she accurately and objectively noted that plaintiff did not meet IDSPPP's threshold requirements for dentures. See FAC at 17. Plaintiff does not dispute this assessment. Defendant Krieg also noted that Dr. Lor, the dentist who had most recently treated plaintiff the month before, had accorded plaintiff a DPC 4, reflecting "no dental care needed." Id. at 16. These factors reasonably supported defendant Krieg's assessment that, despite the partial grant of plaintiff's prior CTF appeal, he did not qualify for dentures under IDSPPP criteria. Id. at 17. Moreover, as defendant Krieg points out, as a dental assistant, she did not have authority to override Dr. Lor's DPC assessment or, absent some compelling reason that she did not find, to recommend to Dr. McDow that plaintiff be considered for an exemption to the IDSSPP requirements.

On November 7, 2011, defendant Dr. McDow reviewed Krieg's findings and denied

1    plaintiff's appeal on First Level Review. Dr. McDow's declaration indicates that he relied on
2    Krieg's review of plaintiff's dental records rather than undertaking his own review. Nevertheless,
3    there is no indication that Krieg's review was inaccurate. As Dr. McDow states, he reasonably
4    relied on Krieg's finding that plaintiff had nine occluding posterior teeth (two more than the
5    threshold requirement for dentures), and that Dr. Lor had, less than two months before, rated
6    plaintiff a DPC 4. Dr. McDow's role in assessing the merits of plaintiff's grievance was to ensure
7    that plaintiff's dental care at SCC met IDSPPP standards, not to independently assess whether
8    plaintiff qualified for an exemption to those requirements, an assessment appropriately entrusted
9    to plaintiff's treating dentists.

10   The decisions reached by both defendants are further supported by the evidence they have
11   submitted concerning plaintiff's subsequent dental care, as set forth in the declaration of Dr. Uy.
12   Although plaintiff has been treated by several dentists since his return to CTF, he has not been
13   able to revive the substance of his prior appeal by obtaining pre-denture preparation of his
14   remaining two quadrants, or the agreement of a treating dentist to pursue a formal exemption
15   request. Moreover, plaintiff's newly submitted evidence, which attributes some of his dental pain
16   to a deep filling, undermines plaintiff's argument that his serious dental needs would be
17   successfully treated with partial dentures.

18   This court previously recommended against dismissing defendants Krieg and McDow
19   because they were each in a position to investigate and ascertain whether plaintiff's serious dental
20   needs required further pursuit of plaintiff's renewed request for partial dentures.[9] See ECF No.
21   76. As this court then stated, "[a]t this juncture, the court is required to assess whether the
22   allegations of plaintiff's FAC are sufficient to state a cognizable deliberate indifference claim
23   against defendants, not to reach an ultimate decision on the constitutionality of defendants'
24   challenged conduct." Id. at 10-1. Upon consideration of the evidentiary record, it is now evident

---

[9] In limited circumstances an individual who reviews an inmate appeal may be held liable under Section 1983. To sustain such a claim, plaintiff must present evidence raising a reasonable inference that the reviewing official knew about an existing constitutional violation and failed to intervene. See Jett v. Penner, supra, 439 F.3d at 1098; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

that Krieg's and McDow's assessments were well supported by plaintiff's dental records and the IDSPPP dental care standards. Plaintiff has submitted no evidence demonstrating that either defendant was "aware of [] facts from which the inference could be drawn that a substantial risk of harm" would befall plaintiff by declining to further pursue his request for partial dentures, Farmer, 511 U.S. at 837, or that his continuing dental symptoms would be resolved by partial dentures. In the absence of evidence showing that the chosen course of treatment "was medically unacceptable under the circumstances," Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), a difference of opinion between a prisoner and his prison medical providers – or among medical providers – does not sustain a deliberate indifference claim, see Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

For these several reasons, the court finds that plaintiff has failed to demonstrate that either defendant Krieg or McDow were aware of facts from which a reasonable inference could have been drawn that their failure to pursue plaintiff's request for partial dentures posed a substantial risk of harm to him. Therefore, summary judgment should be granted for defendants Krieg and McDow, and denied for plaintiff.

### VII. Qualified Immunity

Alternatively, defendants seek summary judgment based on qualified immunity. Because the undersigned finds that plaintiff has not demonstrated a constitutional violation of his Eighth Amendment rights, the court need not reach defendants' qualified immunity defense.

### VII. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF No. 94, be granted;

2. Plaintiff's motion for summary judgment, ECF No. 95, be denied;

3. Judgment be entered for defendants; and

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 23, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE